[A commission issued to four persons jointly to take depositions in England cannot be validly executed by three of them; and depositions taken by three will be ruled out, on the objection of a party, although the two commissioners nominated by him participated.]

[See Banert v. Day, Case No. 836.]

A commission had issued to four commissioners, jointly, to take the depositions of witnesses in England. It was executed and returned by three of the commissioners only, two of whom, however, were of the defendant's nomination. At the trial of the cause, the defendant's counsel objected to the reading of the depositions; and cited 1 Bac. Abr. 202; 2 Inst. The plaintiffs' counsel observed, that the commission had not issued in the usual form; but insisted that as the defendant's commissioners had attended, the objection could not be maintained on his part.

Ingersoll & Tod, for plaintiffs.
Franklin & Dallas, for defendant.

BY THE COURT. The objection is fatal. The commissioners do not derive their authority from the parties, but from the court; and as it is a special authority, it must be strictly pursued. The power given to four, cannot be well executed by three, commissioners. The evidence overruled.

## Case No. 5,872.

### GURNEE v. BRUNSWICK.

[1 Hughes, 270;[1] 1 Va. Law J. 301.]

Circuit Court, E. D. Virginia. June, 1876.

REMOVAL OF CAUSES — ACT OF MARCH 3, 1875— "COURT" — "SUIT" — APPEAL FROM BOARD OF COUNTY SUPERVISORS—WHEN APPLICATION FOR REMOVAL MUST BE MADE.

1. The board of supervisors of the county, under the laws and constitution of Virginia, is not a court, and a petition by a creditor to the board, praying the allowance of his claim, is not a suit. But where an appeal is taken from the decision of the board to the county or circuit court, it then becomes a suit, and the jurisdiction of such court is original and not appellate.

2. To remove a cause from a state court to the circuit court of the United States, under the

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

act of March 3, 1875 [18 Stat. 470], application must be made at or before the first term at which the cause may be tried, i. e., when the cause is ready for trial, although the court and parties may not be ready to try it.

[Cited in Forrest v. Edwin Forrest Home, 1 Fed. 462; Wheeler v. Liverpool, L. & G. Ins. Co., 8 Fed. 198; Meyer v. Norton, 9 Fed. 435; Cramer v. Mack, 12 Fed. 804.]

[Cited in Phoenix Life Ins. Co. v. Saettel. 33 Ohio St. 282; Eldred v. Becker, 60 Wis. 45. 18 N. W. 643; Clark v. Child, 136 Mass. 347.]

3. Under the laws and practice of Virginia an appeal to the county or circuit court of the state from a decision of the board of supervisors, disallowing a claim against the county, is triable at the first term of the court after the appeal is taken, without pleadings, and an application to remove the cause to the United States court, under the act of March 3. 1875, must be made at that term; if made afterwards, and the removal is effected, the United States court is without jurisdiction, and the cause must be remanded.

[Followed in Blackwell v. Braun. 1 Fed. 352. Cited in Winberg v. Berkeley Co. Railway & Lumber Co., 29 Fed. 721.]

4. Quaere.—Whether subdivision 3 of section 639, Rev. St., allowing the removal of causes from the state to the United States courts, on the ground of prejudice and local influence, has been repealed by the act of March 3, 1875.

[Cited in Aldrich v. Crouch, 10 Fed. 307.]

Motion to remand the cause to the circuit court of Brunswick county.

Legh R. Page and J. A. Jones, in support of the motion.

Sheffey & Bumgardner and R. B. Davis, contra.

Before WAITE, Circuit Justi e, and BOND, Circuit Judge.

WAITE, Circuit Justice. W. S. Gurnee, the plaintiff, a citizen of the state of New York, being the alleged owner of certain bonds of the county of Brunswick, Virginia, on which there was a large amount of interest due and unpaid, on the 9th of January, 1875, presented his account for the same to the board of supervisors of the county, stating each item and the nature thereof separately and specifically, and praying for an order of the board directing the treasurer of the county to pay him the amount then due; that a levy might be made on the county to raise the sum necessary to pay off the debt, and generally, that such orders might be made and acts done as should be necessary to secure to him the payment of the sum then due, and such further sums as might thereafter accrue to be due and payable as interest upon the bonds, at the times, for the amounts, and in the manner set forth on the face of the bonds. His account was disallowed by the board, and he thereupon, in due time, appealed to the county court of the county. At the proper time the clerk of the board made his report to the court as follows: "I respectfully report to your honor, that, on the 9th January, 1875, W. S. Gurnee presented to the board of supervisors of said county a petition (a copy of which is hereto annexed, marked 'A,' and made part of this return) asking for the payment of a certain sum of money claimed to be due by the county of Brunswick to said Gurnee as interest in arrear and unpaid upon certain bonds of said county, executed to the Norfolk and Great Western Railroad Company, and the said board wholly disallowed the claim of the petitioner and refused the prayer of the petition. The said W. S. Gurnee, by his counsel, appealed and gave the notice, and executed the bond required by law, which notice and bond are herewith returned." This report, with the petition, notice, and bond, were duly filed in the county court, where, on the 22d February, 1875, by consent of parties it was ordered that the case be removed to the circuit court of the county. The files were thereupon transferred to the circuit court, and, on the 21st April, 1875, an order was there entered continuing the cause until the next term. At another term, and on the 18th October, 1875, the following entry was made: "On motion of the defendant, and for reasons appearing to the court, it is ordered that this cause be continued at the costs of the defendant until the next term." In vacation, and previous to a term to be held in April, 1876, on motion of Gurnee, an order was made for the issue of a subpoena duces tecum for the appearance of a witness to testify in his behalf and the production of certain books and papers at the court-house, April 15th, 1876. Depositions were taken by Gurnee on the 10th, 11th, and 12th March, 1875, and filed in the cause. No pleadings in form were filed by either party, and no orders were made by the court, or so far as appears, asked for in that behalf. On the 13th April, 1876, Gurnee filed his petition and bond under sections 2 and 3 of the act of March 3, 1875 (18 Stat. 470), for the removal of the cause to this court, upon the ground of the citizenship of the parties. The record does not show that any action was taken by the state court upon this petition, but the papers were in due time filed and the cause docketed in this court. The defendant, on the 19th May, 1876, moved that the cause be remanded to the circuit court of the county. The questions now presented for consideration arise upon this motion. Two objections are made to the jurisdiction of this court, to wit: 1. That the case was not removable because it came into the circuit court of the county upon appeal and for review of the decision of another judicial tribunal. 2. That the petition for removal was not filed in the state court before or at the term at which the cause could have been first tried.

These objections will be considered in their order:

1. Did the circuit court of the county take jurisdiction of the cause under its appellate or original jurisdiction? Article 2 of the constitution of Virginia is as follows: "The legislative, executive, and judiciary depart-

ments shall be separate and distinct, so that neither exercise the powers properly belonging to the others; nor shall any person exercise the power of more than one of them at the same time, except as hereinafter provided." Article 6 relates to the judiciary department, and provides (section 1) that, "there shall be a supreme court of appeals, circuit courts, and county courts," and corporation or hustings courts in cities and towns (section 14); and (section 22) that all judges shall be commissioned by the governor. Article 7 relates to county organizations. Each county is to be divided (section 2) into townships, and each township is required, among other things, to elect annually one supervisor. These supervisors of the townships are constituted a board of supervisors of the county, and are required to assemble at the court-house on the first Monday in December in each year, and audit the accounts of the county, examine the books of the assessors, regulate and equalize the valuation of property, fix the county levies for the ensuing year, apportion the same among the various townships, and perform such other duties as shall be prescribed by law. By section 5 it is made the duty of the general assembly, at its first session, after the adoption of the constitution, to pass such laws as should be necessary to give effect to the provisions of this article. The legislation, under this power, so far as it is important to the consideration of this case, is found in title 16, c. 46, Code Va. 1873, p. 438, et seq. By this it is provided (section 2) that the supervisors of the several townships in each county shall constitute the board of supervisors of the county, and that they may sue or be sued in relation to all matters connected with their duties as such board. They may have a seal. Section 7. They are empowered to examine, settle, and allow all accounts chargeable against the county, and, when so settled, to issue warrants therefor as provided by law. Section 6, subd. 2. No person can maintain an action against a county upon any claim or demand, other than a county order, until he shall have first presented it to the board of supervisors for allowance. Section 14. No account can be allowed by the board unless the same shall be made out in separate items, and the nature of each item specifically stated. It is made the duty of the attorney of the commonwealth, who is a county officer elected by the people (Const. art. 7, § 1), to represent the county before the board. He is required to resist the allowance of any claim which is unjust, or not before the board in proper form, or upon proper proof, or which for any other reason ought not to be allowed. When a claim has been allowed which is improper or unjust, he may appeal from the decision of the board to the county court. Section 10. If a claim is disallowed, the person presenting it may appeal to the county court by causing a written notice of the appeal to be served on the clerk of such board, within thirty days of the time of making the decision, and executing a bond in the form prescribed. Section 12. When the appeal is taken, the clerk of the board is required immediately to give notice thereof to the attorney for the commonwealth, and to make a brief return of the proceedings in the case before the board, with the decision thereon, and file the same, together with the bond and all the papers in the case in his possession, with the clerk of such court; and the appeal is to be entered, tried, and determined the same as appeals of right from an order of a county court in a controversy concerning a will. Section 13.

The determination of the board of supervisors disallowing a claim is final, and a perpetual bar to any action in any court founded upon such claim, unless the appeal shall be taken, or unless the board shall consent to the institution and maintenance of such an action. If judgment is recovered against the county upon the appeal, it is made the duty of the board of supervisors, to provide for the same in the next county levy, and for the treasurer to pay the money, when collected, to the person to whom the same shall have been adjudged, upon the delivery of a proper voucher. If payment shall not be made before the first day of December next succeeding the levy, execution may issue upon the judgment, but not before. Section 15. From this recital it is apparent that the board of supervisors is not a court, and that the proceedings there are not a suit. In the Sewing-Machine Cases, 18 Wall. [85 U. S.] 585, a suit was defined to be, "Any proceeding in a court of justice, in which a plaintiff pursues his remedy to recover a right or claim." The board are the representatives of the people elected to supervise the business of the county, which has been, by law, committed to their care. They constitute a branch of the executive department of the government, not of the judiciary. A part of their duties is to "examine, settle, and allow accounts," chargeable against the county, and when settled, to issue warrants and levy taxes for the payment. They are the officers charged by law with the duty of auditing claims. Demand of payment must be made on them; they alone represent the county for that purpose. When an account is presented to them, it is for allowance, not for adjudication. In settling and allowing, they do not act judicially. They simply recognize the claim as valid against the county, and allow it, or they reject it. They render no judgment and issue no execution. Their duty is to direct payment of the accounts by the proper officer, and to provide him with the necessary means for that purpose by taxation. When they have made their allowance, the account has become liquidated, and may be sued without further demand. All these duties are purely administrative, and the proceeding by which their performance is enforced partakes

in no respect whatever of the character of a suit. There are no parties, save the claimant and the board; the board occupy one side, and the claimant the other. It is true the attorney for the commonwealth is required to represent the county, and resist improper allowances, but in this he appears rather as the legal adviser of the board than as the manager of the cause of a litigant. Apply another test. The act of congress provides for the removal, under certain circumstances, of any suit of a civil nature, at law or in equity, pending in any state court. If the board were a court, and the proceeding before them a suit, the case could have been removed while pending before the appeal. But the right of such removal, we think, will hardly be claimed, for the obvious reason that the relief asked of the board is administrative only, and not judicial. They were asked to pay, not to enforce payment. If, however, the board disallow the claim, and refuse to provide for its payment, judicial action becomes necessary. For this an appeal is given to the courts—not an appeal from one court to another, but to a court from the executive. By the appeal a suit is commenced, and thereafter the proceeding is judicial. The notice to the clerk is equivalent to a summons and service in ordinary actions. Under the appeal the case does not come up for review, but for original adjudication. All previous to the appeal was preliminary to the commencement of the suit.

There is nothing in the form of the commencement which makes the proceeding anything else than a suit. The form of commencing actions is always within the control of the legislature. It is "due process of law" within the meaning of the constitution of the United States, if there is lawful notice to appear, and time and opportunity to answer and defend. The form of the notice is not important, if there is notice in fact. The states may prescribe the form of a remedy in their own courts for every case. Here a demand is required before a suit can be commenced. There is nothing unusual or inequitable in this. It is no more than providing that contracts of the counties for the payment of money are contracts to pay after demand actually made in the manner required by law. Upon such contracts demand must always be made before suit is brought. The provision further in this case is, that after refusal to pay upon demand, suit shall be commenced in a certain form or not at all. This is certainly within the power of the legislature, so far as it relates to proceedings in the tribunals of the state. From this it is apparent that the case, at the time of the removal, was pending in the state court under its original and not under its appellate jurisdiction, and that the first ground urged in support of this motion is not sustainable.

2d. Was the application for the removal made in time? The right of removal is a statutory right. To support the jurisdiction of this court, therefore, the plaintiff must bring himself strictly within the provisions of the statute. The law requires that the petition for removal shall be filed in the state court "before or at the term at which said cause could be first tried, and before the trial thereof." A cause cannot be tried until in some form an issue has been made up for trial. The pleadings or statements necessary to make the issue are regulated by the practice in the court where the trial is to be had. As soon as the issue is made up, the cause is ready for trial. The parties and the court may not be ready, but the cause is. The first term, therefore, at which a case can be tried is the first term at which there is an issue for trial. An application for removal to be in time must be made before or at this term.

This case is one to be "entered, tried, and determined, the same as appeals of right from an order of the county court in a controversy concerning a will." In such cases, the first duty of the court is to summon the persons interested to appear on a certain day, and, when they have been summoned or have otherwise appeared as parties, to proceed and hear the motion for probate. If any person interested asks it, the court must order a trial by jury to ascertain whether the paper produced is the will of the decedent, but if no such trial be asked the court must proceed without to decide the question of probate. Code 1873, c. 118, §§ 29, 31, 32. A summons from the court was not necessary in this case, even if it would have been otherwise required, because the record shows that the parties appeared in the county court on the 22d of February, and consented to a removal to the circuit court of the county. An appeal of right in a controversy concerning a will, carries a cause into court as upon a motion of probate. By analogy, then, this cause stood in the circuit court of the state upon its removal there, as upon a motion for judgment and notice served. Such a motion is authorized by the Code of Virginia in cases where a person is entitled to recover money by action on any contract. Code 1873, c. 164, § 6. And an established practice exists in the courts in reference to such proceedings. Before every term of a circuit court in Virginia, the clerk is required by law to make out a "docket of the following cases, to wit: First, cases of the commonwealth; second, motions and actions, in the order in which the notices of motion were filed, or in which the proceedings at rules in the action were terminated," and this docket is "to be called, and the cases for trial disposed of for the term, in that order, except that the court may, for good cause, take up any case out of its turn." Code 1873, c. 173, § 1. No provision is made for pleadings in motions for probate upon appeal or in motions for judgment, and none is necessary. The form of the proceeding is such as to require the plaintiff to make out his case by proof, whether the defendant appears to de-

fend or not. No judgment can be taken by default. Nothing is confessed by a failure to plead. The case stands from the time it comes into court as it would if a declaration had been filed and the general issue pleaded. The itemized account, with the specific statement of the nature of each item, presented to the board and sent to the court upon the appeal, constitute all the pleadings necessary to put the case in a condition for trial. The circumstances of a case may be such as to make it desirable that issues should be presented more specific than those which come up in this form. If so, the court may order accordingly, either upon its own motion or that of the parties. Such issues may simplify the trial when it is had, but there may be a trial without them. For all the purposes of the present inquiry, such orders for specific issues may be likened to amendments to pleadings after issue has once been joined. They change to some extent the character of the trial to be had, but the court could have proceeded without them.

This case was placed upon the docket which the clerk was required to make, at the April term, 1875, and also at the October term of the same year. It certainly must have been in a condition for trial, according to the practice of the court at the October term, for the record shows a continuance then upon the motion of the defendant at its costs. This condition would not have been imposed unless the plaintiff had a right to insist upon a trial if the court did not otherwise direct. From this the conclusion follows, that the application for removal was not presented in time, and consequently that this court has no jurisdiction of the case. It is said that a further application will be made to the state court for a removal under the third subdivision of section 639, Rev. St., on the ground of prejudice and local influence, and we are asked to decide now whether, since the act of 1875, this part of that section is in force. The point is not made upon the record, and for that reason we must decline its consideration. It cannot now be determined so as to bind the parties. An order may be entered remanding the cause to the circuit court of the county for such further proceedings as may be proper in the premises.